**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY LEON GREENHILL, | ) Case No.: 1:20-cv-00657-JLT (HC) |
| Petitioner, | ) |
| | ) ORDER DENYING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| | ) |
| WARREN L. MONTGOMERY, | ) ORDER DIRECTING CLERK OF COURT TO |
| | ) ENTER JUDGMENT AND CLOSE CASE |
| Respondent. | ) |
| | ) ORDER DECLINING ISSUANCE OF |
| | ) CERTIFICATE OF APPEALABILITY |

Petitioner is serving a 25-years-to-life sentence for second degree robbery and obstructing justice. On May 11, 2020, he filed this habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and DENIES the petition.

**I.      PROCEDURAL HISTORY**

Petitioner is convicted of second degree robbery and obstructing justice. People v. Greenhill, No. F076968, 2019 Cal. App. Unpub. LEXIS 1796, at *1 (Mar. 14, 2019). It also was found true that Greenhill had two prior strike convictions and had previously been convicted of a serious felony in 1976. Id. Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA remanded for resentencing for the limited purpose of allowing the trial court to consider exercising its discretion pursuant to Penal Code sections 667, subdivision (a) and 1385, subdivision (b), as amended by Senate Bill No. 1393 (2017-2018 Reg. Sess.), and in all other respects affirmed the judgment. Id. at *17.

1    On April 16, 2019, Petitioner filed a petition for review in the California Supreme Court (LD[1]

2    17-22), which was denied on May 22, 2019 (LD 17-23). Petitioner filed a petition for writ of habeas

3    corpus in the California Supreme Court on December 16, 2005 (LD 17-24), which was denied on

4    September 13, 2006 (LD 17-25).

5    On July 24, 2017, Petitioner filed a petition for writ of habeas corpus in Kings County Superior

6    Court (LD 17-26), which the court denied on September 1, 2017 (LD 17-27). Petitioner filed a petition

7    for writ of habeas corpus in the Fifth DCA on September 21, 2017 (LD 17-28), which was denied on

8    October 25, 2017 (LD 17-29). Petitioner filed a petition for writ of habeas corpus in Fresno County

9    Superior Court on February 2, 2018 (LD 17-30), and the court denied the petition on March 20, 2018

10   (LD 17-31). Petitioner filed a petition for writ of habeas corpus in the Fifth DCA on April 11, 2018

11   (LD 17-32), and the Fifth DCA denied the petition on May 25, 2018 (LD 17-33). Petitioner filed a

12   petition for writ of habeas corpus in the California Supreme Court on June 18, 2018 (LD 17-34),

13   which was denied on October 10, 2018 (LD 17-35). On June 21, 2019, Petitioner filed a petition for

14   writ of habeas corpus in Kings County Superior Court (LD 17-36), which was denied on August 5,

15   2019 (LD 17-37). Petitioner filed a petition for writ of habeas corpus in the Fifth DCA on August 28,

16   2019 (LD 17-38), which the Fifth DCA denied on December 19, 2019 (LD 17-39). On January 13,

17   2020, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court (LD 17-40),

18   which was denied on April 15, 2020 (LD 17-41).

19   Petitioner filed the instant habeas petition on May 11, 2020. (Doc. 1.) In response to an order

20   by this Court, the Respondent filed an answer on November 12, 2020. (Doc. 16.) Petitioner filed a

21   traverse on November 23, 2020. (Doc. 18.)

22   **II.    FACTUAL BACKGROUND**

23   The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

24   The Kings County District Attorney charged Greenhill in count 1 with second degree
     robbery, a felony, in violation of Penal Code section 211 and in count 2 with obstructing

25   justice, a misdemeanor, in violation of section 148, subdivision (a)(1). It also was alleged
     that Greenhill had suffered two prior serious felony strike convictions and had previously

26   been convicted of a serious felony.

27

28   [1] "LD" refers to the documents lodged by Respondent.
     [2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).
     Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

Testimony at trial established that Teresa Lewis worked for Educational Employees Credit Union (EECU) in Hanford. Her duties at EECU were to "perform everyone's transactions for them." Her work area consisted of a teller drawer and computer; she was separated from customers by a counter. There was no glass partition on the counter.

On February 27, 2017, shortly after opening, a man walked up to her station and "asked for 100's, 50's, and 20's." The man was wearing a black jacket and black gloves. He had "salt and pepper hair." Lewis identified the man as Greenhill.

When he made the request, Lewis was at first confused because he did not give her an account number. Greenhill then repeated his request and asked for 100's, 50's, and 20's. Greenhill brought his hands up and Lewis saw he was wearing gloves; she knew then she was being robbed. Lewis had a "little over $10,000" in her drawer at the time. Lewis testified she was scared when Greenhill demanded the money from her.

Lewis handed over the money in her drawer, including the bait money. Lewis described bait money as money that has been marked in case they are robbed; it is clipped separately. Greenhill took the money, except the one dollar bills. He handed back the bait money. After Greenhill walked out, Lewis closed her station and told management what had happened.

The surveillance video from EECU showed Greenhill at Lewis's station that morning. The video was shown to the jury.

Crystal Eaton also worked for EECU at the Hanford branch on February 27, 2017, as a teller. On that morning, she saw Greenhill walk into EECU; he was wearing a "long black coat and thick black gloves." Eaton watched as Greenhill walked up to Lewis and "demanded that she give him all her 100's, 50's, and 20's." Eaton's station was immediately to the right of Lewis. Eaton pressed the "panic button immediately" because she "knew it was a robbery." Eaton knew it was a robbery because Greenhill "demanded the money from [Lewis] not once, but twice." Eaton was scared.

Police Officer Patrick Jurdon was dispatched to investigate the silent alarm triggered at EECU. He responded to the location and began looking for anyone matching the description that had been broadcast of the suspect. Jurdon's search took him to a nearby Sears Auto Center, where he saw a man matching the description of the suspect.

Jurdon stopped his patrol vehicle and "advised the subject to stop." Instead, the suspect kept walking. Jurdon continued to give orders to stop; the suspect began running towards the Hanford Mall. Jurdon gave pursuit on foot and managed to apprehend the suspect; he called for backup and placed the suspect under arrest. As Jurdon was running to catch the suspect, he noticed a pile of black clothing between a wall of the Sears Auto Center and an electrical panel.

Jurdon was wearing a body camera the morning he arrested Greenhill. The video from the body camera was played for the jury.

Police Officer Jonathan Rivera assisted in the arrest of Greenhill. Rivera emptied Greenhill's pockets to make sure Greenhill did not possess any weapons. Greenhill had stacks of money, a folding knife, two screwdrivers, and some other items in his pockets.

Raymond Dias was a detective with the Hanford Police Department in 2017. Dias arrived at the Sears Auto Center after Greenhill was in custody. Dias collected a pair of gloves located just east of the Sears Auto Center, and a leather jacket and a pair of sweatpants from behind the Sears Auto Center, in between the electrical box and the wall.

Dias and an officer counted the denominations of money found on Greenhill. A total of $10,440 was found on Greenhill at the time of his arrest and another $15 was in the jacket found behind the Sears Auto Center, for a total of $10,455. Dias took the money to EECU; the tellers counted it and confirmed the total was $10,455. The tellers also provided Dias with a receipt, showing the denominations of the bills and the total. It was later confirmed that the total amount stolen from EECU was $10,455.

Greenhill testified in his own defense. He had been visiting with friends in Hanford. He had his friends drop him at the Hanford Mall to find his way home before they left for Bakersfield. He spotted the EECU branch and decided to ask about overdraft protection. Greenhill claimed he walked into the bank with the intent to ask about overdraft protection.

Greenhill claimed he approached Lewis's window and said, "I need some money," and "'I need like 50 to 100.'" Lewis bent down and "sets a big pile of money on the counter." Then she "dips again, comes up with more money." Greenhill testified Lewis "never said nothing, anything to me." Greenhill was "thinking, well, I mean, she is giving it, I am taking it. So I just started folding it up, folding it up."

After picking up the money, Greenhill walked out of EECU. He was taking the money out of his coat when he heard sirens. Greenhill dropped the coat next to the electrical box. He claimed he was wearing gloves to cover his tattoos and an injury to his hand.

On August 22, 2017, the jury found Greenhill guilty of both counts and found true that he had two prior strike convictions and had been convicted in 1976 of a serious felony.

On December 29, 2017, Greenhill moved to strike the prior strike convictions. The trial court denied the motion.

Greenhill was sentenced on January 17, 2018, to a term of 25 years to life on count 1, plus an additional five years pursuant to section 667, subdivision (a)(1), for the prior serious felony conviction. The term for the count 2 offense was 364 days and he was credited with this time. He was awarded total credits of 373 days and various statutory fines and fees were imposed.

Greenhill filed a timely notice of appeal on January 22, 2018.

People v. Greenhill, 2019 Cal. App. Unpub. LEXIS 1796, at *2-7.


## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is

4

1  located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

2      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

3  1996, which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v.

4  Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's

5  enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

6  governed by its provisions.

7      B.      Legal Standard of Review

8      A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the

9  petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was

10  contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

11  by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an

12  unreasonable determination of the facts in light of the evidence presented in the State court

13  proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529

14  U.S. at 412-413.

15      A state court decision is "contrary to" clearly established federal law "if it applies a rule that

16  contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

17  that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

18  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

19      In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an

20  "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

21  fairminded jurists could disagree" that the state court decision meets the standards set forth in the

22  AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal

23  law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203

24  (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that

25  the state court's ruling on the claim being presented in federal court was so lacking in justification that

26  there was an error well understood and comprehended in existing law beyond any possibility of

27  fairminded disagreement."  Harrington, 562 U.S. at 103.

28      The second prong pertains to state court decisions based on factual findings.  Davis v.

5

1    Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

2    Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

3    petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts

4    in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520

5    (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's factual finding is

6    unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."

7    Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*,

8    Maddox v. Taylor, 543 U.S. 1038 (2004).

9         To determine whether habeas relief is available under § 2254(d), the federal court looks to the

10   last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

11   501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

12   independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v.

13   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

14        The prejudicial impact of any constitutional error is assessed by asking whether the error had

15   "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

16   Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding

17   that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

18   harmlessness).

19        C.    Review of Petition

20        Petitioner raises multiple claims for relief in the instant petition all surrounding one issue: That

21   his trial and appellate counsels rendered ineffective assistance.

22        1.    Ineffective Assistance of Counsel

23        Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

24   Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of

25   counsel are reviewed according to Strickland's two-pronged test.  Strickland v. Washington, 466 U.S.

26   668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle,

27   792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a

28   defendant has been actually or constructively denied the assistance of counsel altogether, the

1   Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does

2   apply where counsel is present but ineffective).

3         To prevail, Petitioner must show two things.  First, he must establish that counsel's deficient

4   performance fell below an objective standard of reasonableness under prevailing professional norms.

5   Strickland, 466 U.S. at 687-88.  Second, Petitioner must establish that he suffered prejudice in that

6   there was a reasonable probability that, but for counsel's unprofessional errors, he would have

7   prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine

8   confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done;

9   rather, it is whether the choices made by counsel were reasonable.  Babbitt v. Calderon, 151 F.3d

10  1170, 1173 (9th Cir. 1998).

11        With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

12  unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.

13  Mirzayance, 556 U.S. 111, 122 (2009).  Accordingly, the question "is not whether a federal court

14  believes the state court's determination under the Strickland standard "was incorrect but whether that

15  determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S.

16  465, 473 (2007); Knowles, 556 U.S. at 123.  In effect, the AEDPA standard is "doubly deferential"

17  because it requires that it be shown not only that the state court determination was erroneous, but also

18  that it was objectively unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  Moreover, because

19  the Strickland standard is a general standard, a state court has even more latitude to reasonably

20  determine that a defendant has not satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652,

21  664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's

22  specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-

23  case determinations.")

24        Petitioner contends that his most recent trial and appellate attorneys were deficient for not

25  challenging the validity of his 1976 convictions during trial and appeal. However, Respondent

26  explains that Petitioner's trial and appellate counsels both had good reason to decline to challenge the

27  validity of Petitioner's 1976 convictions. (Doc. 16 at 13.) Respondent alleges that Petitioner's

28  proposed grounds for challenging the 1976 convictions were factually flawed. (Doc. 16 at 12.) As his

appellate counsel explained to Petitioner, she and trial counsel investigated the multiple avenues Petitioner suggested for challenging his 1976 prior convictions, but none had merit. (Doc. 16 at 13; Doc. 1 at 47-48, 50-51.) Respondent asserts that Petitioner's theories of admissibility of evidence to prove the 1976 convictions were legally wrong and proceeded from incorrect factual premises, and Petitioner cannot show his attorneys should have argued factually inaccurate theories. (Doc. 16 at 13.) Respondent maintains that Petitioner's theories based on factual inaccuracies could not have succeeded. (Doc. 16 at 13.) Respondent also asserts that Petitioner's own attachments to his habeas petitions indicate that both attorneys had a strategic basis for not challenging the 1976 convictions on invalidity grounds. (Doc. 16 at 11-12.) Additionally, as Respondent argues, the state court authorities Petitioner cites are distinguishable and fail to support Petitioner's contentions. (Doc. 16 at 13-15.) As Respondent argues, counsels cannot be deficient for refusing to take a futile action. (Doc. 16 at 13); see Strickland, 466 U.S. at 689 (counsel is afforded "wide latitude . . . in making tactical decisions").

Moreover, Petitioner failed to establish that he suffered prejudice. Petitioner failed to demonstrate that there is a reasonable probability that challenging the validity of his 1976 convictions during trial or appeal would undermine confidence in the outcome of the trial. Petitioner failed to show that counsels erred or that the error resulted in any prejudice. The claims should be rejected.

## IV.    CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a)     In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)     There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## V.     ORDER

Accordingly, the Court ORDERS:

1.      The petition for writ of habeas corpus is DENIED with prejudice;

2.      The Clerk of Court is DIRECTED to enter judgment and close the case; and

3.      The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **January 11, 2021**                    **/s/ Jennifer L. Thurston**
                                               UNITED STATES MAGISTRATE JUDGE